Brassard, J.
The plaintiff, Alan Berger (“Berger"), has brought suit pursuant to G.L.c. 15 IB alleging that the defendant, Brandéis Univeristy (“Brandéis”), discriminated against him on the basis of his religion and retaliated against him for pursuing his claims. Brandéis now moves for summary judgment asserting that Berger failed: 1) to bring forth a claim of discrimination within the statutory six months; 2) to allege any harassment that was sufficiently severe and pervasive to establish religious discrimination; and 3) to establish any claims of retaliation. After hearing and careful review of the papers, Brandéis’ motion for summary judgment on Count I is ALLOWED.
BACKGROUND
The facts, taken in the light most favorable to the plaintiff, are as follows.
Brandéis University was founded in 1948 by the American Jewish community. Berger is of Jewish ancestry and observes the Jewish religious faith. In 1980, Berger began his employment as a Philosophy professor at Brandéis and has continued to be employed by Brandéis since that time. In 1988, Berger became a tenured professor of Philosophy at Brandéis. In 1996, Palle Yourgrau (“Yourgrau") became Chairman of the Philosophy Department. Eppie Boze (“Boze”) is the Academic Administrator for the Philosophy department. She has been employed with Brandéis since May 1989.
On September 30, 1998, Berger was home observing Yom Kippur, a sacred day in the Jewish year. On that day, Boze called Berger and left a message on his answering machine urgently instructing him to check his e-mail. Upon Berger’s review, there were two emails from Brandéis. The first questioned Berger’s decision to reschedule a class that was originally scheduled on Friday, October 2, 1998, during the Jewish Sabbath. The second notified Berger of an immediate departmental matter that was to be resolved that day, being Yom Kippur, and that it would be the only opportunity to discuss the matter. Berger was not only offended that his observance of the sacred day had been interrupted, but also that he would lose an opportunity to discuss a business matter if he did not respond immediately. On November 11, 1998, Berger wrote Dean Robin Miller (“Miller”) requesting that action be taken regarding this incident. Since the Yom Kippur incident, Berger has not been called at home while observing any other religious day.
Berger asserts that his complaint about the Yom Kippur incident precipitated the creation of a hostile working environment by Brandéis. Berger states that, from September 1998 until April 2000, Brandéis retaliated against him. He contends that during this time, Miller failed to investigate the Yom Kippur incident; Yourgrau reprimanded Berger for his teaching assistant being late to administer an exam; Yourgrau threatened Berger with disciplinary action; and Yourgrau froze his salary.
In April 2000, during Passover, Berger alleges another discriminatory act on the part of Boze. Berger contends that after a class was rescheduled due to Passover, Boze questioned him about the rescheduling and challenged Berger as to whether the class technically fell during Passover. After Berger explained that he rescheduled the class so he and his students could attend Seder, Boze responded by saying, “Yeah, well I know where they [students] spend their Seders, in St. Thomas.” On April 17, 2000, Berger filed a complaint with Yourgrau regarding Boze’s comment. Yourgrau did not investigate the complaint.
Berger asserts that, after this incident, Brandéis continued to retaliate against him. On June 9, 2000, Yourgrau sent Berger a letter stating concerns about his publication still not being published, mixed reviews of student evaluations, Berger not attending some of his classes, his lack of collegiality with the staff, and the refusal to accept the chair’s teaching assignment. On September 27, 2000, Yourgrau sent Berger another letter defending Boze’s Seder comment *351 and threatened Berger with disciplinary action because his continued lack of collegiality was creating a hostile work environment within the department.
Berger filed a religious discrimination complaint against Brandéis with the Massachusetts Commission Against Discrimination (“the MCAD”) on November 13, 2000. The case was later removed to the Superior Court. Brandéis filed this present motion for summary judgment on May 14, 2002, for the remaining count in Berger’s Complaint, which includes his religious discrimination and retaliation claims.[1]
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. See Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The materials presented by the moving party need not negate or disprove every essential element of the claim of the party on whom the burden of proof at trial will rest, but they must demonstrate that there is no reasonable expectation that proof of the elements will be forthcoming at trial. See Kourouvacilis v. General Motor Corp., 410 Mass. 706, 711-16 (1991).
Berger filed a complaint with the MCAD alleging that Brandeis participated in several acts of religious harassment and retaliation. Pursuant to G.L.c. 151B, §5, Berger must file his discrimination claim within six months of the alleged discriminatory act.[2] Berger filed his complaint on November 13, 2000; therefore, all claims of harassment after May 13, 2000, are viable, and any claims prior to May 13, 2000, are barred. However, Berger asserts that under the “continuing violation" doctrine, an exception to the six-month statute of limitation, his claims after May 13, 2000 anchor his claims prior to May 13, 2000. See Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521 (2001). In determining whether Brandeis is entitled to summary judgment on Berger’s claims, this court will first determine if the claims after May 13, 2000, constitute religious harassment pursuant to G.L.c. 151B. This court will then determine whether the claims after May 13, 2000 anchor Berger’s claims prior to May 13, 2000, pursuant to the “continuing violation” doctrine. Next, this court will determine if any of the conduct prior to May 13, 2000 constitutes religious harassment pursuant to G.L.c. 151B. Finally, this court will address Berger’s retaliation claim.
I. Religious Harassment After May 13, 2000
Tbds court will first consider whether the incidents which occurred after. May 13, 2000, in and of themselves, constitute religious harassment, a violation of G.L.c. 151B. Berger asserts two incidents of discrimination during this time period. He first alleges discrimination in June 2000, when Yourgrau threatened him with disciplinary action. Berger also alleges that discrimination occurred in September 2000, when Brandéis failed to investigate his complaint of Boze’s allegedly anti-Semetic remark made in April 2000.
In order for Berger’s claims occurring after May 13, 2000, to be discriminatory, he must establish that: 1) he belongs to a protected class; 2) he was subject to unwelcome religious harassment; 3) the harassment was based upon religion; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take prompt remedial action. See Kolodziej v. Smith, 425 Mass. 518, 522 (1997) (the Supreme Judicial Court applies Title VII analysis to plaintiffs claim of religious discrimination); Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 441 (1995).[3]
This court concludes that these two claims do not constitute religious harassment. The June 9, 2000, letter from Yourgrau to Berger, on its face, does not make any reference to religion or harass Berger for his religious beliefs. Instead, the letter provides Berger with a raise of 1.5%, discusses Berger’s performance as a professor, and expresses specific concerns such as publication delay, the mixture of responses of student evaluations, the missing of classes, his lack of collegiality within the department, and his refusal to accept a chair’s teaching assignment. The letter does not refer to Berger’s religious beliefs and does not contain any comments which are hostile or discriminatory with respect to any religious belief.
Berger also contends that the letter from Yourgrau to Berger on September 27, 2000 constitutes religious harassment. This letter is a response to Berger’s letter dated June 13, 2000. The September 27, 2000 letter focuses on Berger’s complaint that the department did not investigate Boze’s comment regarding the students spending their Seder in St. Thomas. As discussed later in this opinion, this court does not find Boze’s comment to be of a harassing nature, and an employer must only remedy a harassing or discriminatory act. See College-Town, Div. of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 167 (1987). Because there was no discriminatory act, the employer is not liable for any failure to investigate.
II. “Continuing Violation” Doctrine
This court must next consider whether, although the incidents after May 13, 2000 did not constitute religious harassment, those incidents nonetheless substantially relate to the alleged discriminatory acts prior to May 13, 2000, and substantially contribute to the continuation of a hostile work environment, thereby making timely the alleged discrimination occurring prior to May 13, 2000. As previously stated, a claim of discrimination must be filed with the MCAD *352 within six months of the alleged discriminatory act. See G.L.c. 151B, §5. Berger’s claims prior to May 13, 2000, are barred unless the “unlawful conduct complained of is of a continuous nature.” Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 529 n.7 (2001), citing 804 C.M.R. §1.03. The Supreme Judicial Court has held that to invoke the continuing violation exception, the plaintiff:
must show, within the six-month limitation period, the existence of at least one incident of [harassing] conduct which, standing alone might not necessarily support [his] claim, but which substantially relates to earlier incidents of abuse, and substantially contributes to the continuation of a hostile work environment, such that the incident anchors all related incidents, thereby making the entirety of the claim for discriminatory conduct timely.
Id. at 533 (emphasis added).
Therefore, Berger must establish that the letters dated June 9, 2000, and September 27, 2000, are substantially related to earlier religious harassment and substantially contributed to the continuation of a hostile work environment.
A hostile work environment has been described to be one that is “pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace.” Id. at 532. Berger contends that the June 9, 2000, letter and the September 27, 2000, letter further escalated an already hostile environment. This court concludes that the letters, while in part asserting that no discrimination had taken place, addressed professional concerns and never intimidated, humiliated, or stigmatized Berger. Further, the letters in no unlawful sense constituted a barrier to Berger’s employment as a professor at Brandéis. Because the letters did not, therefore, contribute to the continuation of a hostile work environment, they cannot anchor discrimination claims prior to May 13, 2000.
III. Discriminatoiy Acts Prior to May 13, 2000
Since this court has determined that Berger did.not timely file with the MCAD as to the allegations occurring prior to May 13, 2000, and that Brandéis is entitled to summary judgment as to the allegations occurring after May 13, 2000, Berger’s discrimination complaint must be dismissed. However, in the event that the court is mistaken as to the statute of limitations issue, the court will address Berger’s allegations occurring prior to May 13, 2000.
Berger alleges two acts of religious harassment: the e-mail and telephone call on Yom Kippur, and Boze’s statement: “Yeah, well I know where they [Brandéis students] spend their Seders, in St. Thomas.” Berger was offended by both acts; however, this is not enough for discrimination. See Gnerre v. Massachusetts Commission Against Discrimination, 402 Mass. 502, 506-07 (1988) (harassment is established if it is “of such a nature that it would make the plaintiffs [employment] significantly less desirable to a reasonable person in the plaintiffs position”) (emphasis added). In addition, the harassment had to affect Berger’s performance or his working conditions and Brandeis had to fail to take any remedial actions. See Ramsdell v. Western Massachusetts Bus Lines, Inc., 415 Mass. 673, 678-79 (1993) (“[A]n employee who alleges [harassment] must show that the employer’s conduct was intentionally or in effect hostile, intimidating, or humiliating to the plaintiff in a way which affected [his] performance or the conditions of [his] employment”); College-Town, 400 Mass. at 167 (an employer who is notified and fails to take remedial action violates G.L.c. 151B).
This court will first address the e-mail and telephone call on Yom Kippur. Berger maintains that he was subject to religious harassment when Boze called him on Yom Kippur. Berger also contends that he was harmed because he had to make a choice of practicing his religion or having a say in a department meeting. Berger does not, nor could he reasonably, suggest that he was intimidated or humiliated by receiving the call on Yom Kippur. Berger has also failed to demonstrate that the telephone call was intentionally or in effect “hostile” in a way which affected his work performance or the conditions of his employment as a university professor. At worst, the telephone call to a colleague observing an important religious holy day was discourteous and not thoughtful. Moreover, Berger has not established that Brandéis failed to take remedial action. It is undisputed that, after Berger expressed his feelings about being called at home on Yom Kippur, Brandéis never again contacted him during a religious holiday.
The second alleged discriminatoiy action is Boze’s comment regarding the students spending their Seders in St. Thomas. This court concludes that this comment is also not sufficiently severe and hostile to constitute discrimination. At worst, it was an “offensive utterance” and recently the United States Supreme Court held, “a recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatoiy changes in the terms and conditions of employment.” Clark County School District v. Breeden, 532 U.S. 268, 271 (2001), quoting Faragher v. Boca Raton, 524 U.S. 775, 788 (1998). Furthermore, not only is the comment not outrageous enough to constitute discrimination, but it is undisputed that other than this comment Berger never heard Boze make a derogatory comment regarding the Jewish religion. See Wynn & Wynn, P.C. v. Massachusetts Commission Against Discrimination, 431 Mass. 655, 667 (2000) (“Stray remarks in the workplace ... do not suffice to satisfy the plaintiffs threshold burden . . .”). For these reasons, this court concludes that Brandéis did not discriminate against Berger based on his religion.
*353 IV. Retaliation Pursuant to G.L.c. 151B.
This court will finally address Berger’s retaliation claim because a litigant can prevail on a retaliation claim even when the discrimination claim has been dismissed. See Bain v. Springfield, 424 Mass. 758, 765 (1997). Berger asserts that there were many incidents of retaliation since his first reported act of discrimination in September 1998. This court concludes that the actions of Brandeis do not constitute retaliation pursuantto G.L.c. 151B, §4(4), because Brandéis’ actions toward Berger were not taken because of his earlier claim of discrimination or because of his Jewish faith, but because of recurring issues that had been addressed prior to his claim. The court will address individually each of Berger’s allegations of retaliation.
In order for Berger to establish a claim of retaliation under G.L.c. 151B, §4(4),[4] he must show that, “[he] reasonably and in good faith believed that [the employer] was engaged in wrongful discrimination, that [he] acted reasonably in response to [his] belief, and that the [employer’s] desire to retaliate against [him] was a determinative factor in [its adverse employment decision].” Tate v. Dept of Mental Health, 419 Mass. 356, 364 (1995); MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996) (plaintiff cannot recover for alleged retaliation if he did not suffer adverse employment action after initiating his legal proceedings). The plaintiff can only be successful if he establishes that “he was subjected to adverse employment action because of his protected activity.” Pontremoli v. Spaulding Rehabilitation Hospital, 51 Mass.App.Ct. 622, 625 (2001), quoting Lewis v. Gillette, Co., 22 F.3d 22, 24 (1st Cir. 1994).
First, Berger alleges retaliation by Brandéis when Miller failed to investigate his complaint regarding the Yom Kippur incident in September 1998. This court concludes that there was no retaliation because Brandéis apologized for the disturbance and it is undisputed that since this incident, Berger has never been disturbed on a religious holiday.
Second, Berger contends that the threats of disciplinary action issued by Miller and Yourgrau on May 13, 1999, and June 9, 2000, are retaliatory acts for his complaint of discrimination. This court concludes that these threats have not materially disadvantaged Berger because he continues to be employed as a professor at Brandéis and because there has been no disciplinary action. Berger has not suffered any adverse employment action. See MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996) (finding that plaintiff had not been materially disadvantaged “in respect to salary, grade, or objective terms and conditions of employment”). Furthermore, the threatened action related to matters that pre-existed the Yom Kippur and Seder incident, as well as the filing of his discrimination complaint.[5] Moreover, Brandeis may conduct disciplinary action, even after Berger makes a claim of discrimination, as long as the action is for his work performance and not because of that claim. See Tate, 419 Mass at 363.
Third, Berger alleges retaliation in 1998 when Yourgrau froze his salary. When the employment action is consistent with employment action taken before the plaintiff ever engaged in protected activity, it is not retaliatory. See Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16-17 (1st Cir. 1997). Berger’s salary had been frozen prior to 1998 due to his work performance and this was the same reason his salary was frozen again in 1998. Therefore, Brandeis’ action was not retaliatory.
Fourth, Berger alleges that Yourgrau reprimanded him with false allegations of his teaching assistant being late in administering an exam and that he structured one of his courses to have six in-class examinations. However, in his deposition, Berger admits that his teaching assistant was indeed “late, but she, I believe, denied that she was 45 minutes late. Perhaps, 20, something like that was something she told me.” He further stated in his deposition that “I had established the policy of establishing six exams on Friday.” Therefore, since these allegations appear to be true, there is no issue of retaliation.
Fifth, Berger contends that contrary to established practice, he had no input in the hiring of a Logic professor, Alex Freidman (“Freidman”), even though he was Chair of the Logic Committee. There has been no evidence presented to establish that this decision was retaliatory. The summary judgment record is to the effect that Freidman, a former graduate student, taught a class the previous semester. Andreas Teuber (“Teuber”), a professor at Brandéis, was approached by students requesting that a symbolic logic course be offered for that Spring because they needed that course to graduate and it was not being offered prior to their graduation. Teuber approached the department and requested that Freidman teach the course. Teuber states in his affidavit that he did not know that Berger was the chair of the logic program, or that a logic committee existed. Brandéis did not retaliate against Berger by having an established instructor teach this course.
Finally, Berger asserts that he was denied an opportunity to teach a course. This claim also fails because the reasons he was denied the course were not retaliatory. The summary judgment records is to the effect that Berger did not follow proper procedures in requesting the course, and that it was veiy similar to another course already being offered. There was no retaliation because Berger’s employment was not materially disadvantaged by these decisions made by Brandeis. See MacCormack, 423 Mass. at 664 (plaintiff must show that he suffered “real harm, as opposed to his subjective feelings of disappointment and disillusionment”).
The adverse employment actions alleged by Berger have not been causally connected to his discrimina *354 tion complaint. This court concludes that Brandéis has produced sufficient evidence that there was no discrimination or retaliation against Berger, and that Berger has not produced evidence to warrant a reasonable jury in concluding otherwise. “The mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The Supreme Judicial Court and the Appeals Court have followed this standard: “the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Dexter’s Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass.App.Ct. 217, 223 (1987) (‘There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim”).
ORDER
For the foregoing reasons, Brandeis’s motion for summary judgment as to the discrimination and retaliation claims in Count I of Berger’s Complaint is ALLOWED.

On September 3,2002, upon a stipulation by the involved parties, this court dismissed all of the claims in Berger’s First Amended Complaint, except for the remaining claim against Brandéis, Count I of Berger’s First Amended Complaint.

This statute was amended on August 7, 2002, and beginning November 5, 2002, the statute of limitations will be 300 days. G.L.c. 151B, §5, as amended by St. 2002, c. 223, §1.

General Laws chapter 151B, Section 4 (1) provides, “[i]t shall be unlawful practice for an employer, by himself or his agent, because of. . . religious creed ... to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . ." The Supreme Judicial Court has observed that in a discrimination case the plaintiffs burden varies depending on the specific facts of a case. See Blare, 419 Mass. at 441. This court has concluded that Berger must prove the elements noted by applying the facts of his case to G.L.c. 151B, §4.

General Laws chapter 15 IB, Section 4 provides that it is unlawful, “[f]or any person [or] employer ... to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.”

The summary judgment record establishes through affidavits and memoranda issued from Provost Irving Epstein (“Epstein”) that the May 13, 1999 letter and the June 9, 2000 letter addressed issues that have been raised with Berger as far back as 1994. These issues include allegations as to: lack of availability on campus; unavailability for department meetings; receiving poor student evaluations; reluctance to participate in university functions; and rescheduling of classes without department approval.